UNITED STATES DISTRICT COURT
DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff,

v.                                                                                              No. 1:17-cr-00370-JCH

IMAD AYSHEH, *also known as*
IMAD MANASSRA, IYAD AYSHEH,
NEDAL AYSHEH, RAED AYSHEH and
NAEL ALI,

    Defendants.

**MEMORANDUM OPINION AND ORDER**

Defendants – brothers Imad, Iyad, Nedal and Raed Aysheh – jointly move for an order compelling the Government to disclose certain discovery (Mot., ECF No. 180). The Government responded (Resp., ECF No. 181), to which Defendants replied (Reply, ECF No. 183). The Court, having carefully considered the motion, briefs, law and being otherwise fully advised, concludes that the motion will be **granted in part** and **denied in part**: The Government will turn over the materials described Defendants' request number 4 – the US Fish and Wildlife policy on recording people who do not know they are being recorded, as well as all consensual monitoring requests and approvals in this case. The balance of the motion is denied.

**A.**    **BACKGROUND**

In 2017, the Aysheh brothers and codefendant Nael Ali were indicted for conspiring to sell "Indian-style" jewelry in violation of the Indian Arts and Crafts Act (IACA), which criminalizes offering or selling a good "in a manner that falsely suggests it is … an Indian

product." 18 U.S.C. § 1159(a).[1] According to the indictment, Imad allegedly established a jewelry business in the Philippines to manufacture Indian-style jewelry using Filipino labor. The jewelry was then supposedly imported into the United States without a country-of-origin stamp and the other Aysheh brothers sold it to retailers and customers throughout the country, including New Mexico, misrepresenting it as Indian made. The brothers are charged with money laundering, introducing goods into United States commerce by false means, smuggling, and mail and wire fraud. In August 2017, the Court granted the Defendants' unopposed motion to designate the case complex.

Throughout the fall and winter of 2020, Defendants successfully obtained some requested discovery from the Government. But in response to Defendants' October 9 discovery request,[2] prosecutors replied by letter on November 10 that, in pertinent part:

> 3. We are unaware of any recordings of witness interviews, other than those already provided to the defense. We will not produce agent notes absent a court order.
>
> 4. We are unaware of additional video or audio of undercover operations that has not not [sic] already been produced.
>
> 5. The Fish and Wildlife Service does not have an official policy on recording witness interviews.
>
> 6. We will disclose *Jencks*, *Giglio*, and *Brady* [materials] as required by law.
>
> 7. The United States had filed a notice regarding co-conspirator statements. Doc. 169.

---

[1] Mr. Ali is no longer a party to this case because the Government dismissed the charges against him pursuant to a plea deal.

[2] No party included the October 9 discovery request in the record, so the Court is unaware of its contents. The Court notes that Defendants say that their discovery request was made on October 9 while the Government identifies October 19 as the date. This discrepancy is noted but it does not implicate the legal analysis.

>8. We are reviewing whether there are additional cellphone and computer extractions and, if any are identified, we will produce those within the scope of discovery.
>
>9. We will produce the available documentation.
>
>10. All pertinent statements of Raed Aysheh have been disclosed in recordings and reports of investigation.
>
>11. Public California LLC filings list Raed Aysheh as the CEO and manager of Golden Bear & Legacy LLC. The application identifies Golden Bear as one of the stores operated by the Aysheh family that were defined as the "IJW Organization."
>
>12. The application also states that I Jewelers Wholesale, Inc. and Golden Bear share an address in Calistoga, California, to the extent that Golden Bear was thought to be a d/b/a for I Jewelers. E.g., ¶¶ 4, 10, 14, 16, 17. Paragraph 13.b of the application refers to Raed Aysheh's position at Golden Bear and accordingly in the IJW Organization.

Defs.' Ex. A, ECF No. 180-1, 1-2.

Frustrated that some of these responses were incomplete or inadequate, on December 29, 2020 Defendants moved to compel disclosure of various categories of discovery. The Government responded that it "has produced the discovery defendants demand and continues to work to determine if there are additional responsive documents, which will be produced if found," and that when it has refused to produce evidence, "it is because [the requested evidence is] plainly irrelevant." *Id*.

**B.    LEGAL STANDARDS**

Federal prosecutors' "duty to disclose in criminal cases arises from at least three sources: (i) rule 16 of the Federal Rules of Criminal Procedure; (ii) the Due Process Clause of the Fifth Amendment; and (iii) the Jencks Act." *United States v. Baca*, No. CR 16-1613 JB, 2019 WL 2649835, at *34 (D.N.M. June 27, 2019).

**1. Federal Rule of Criminal Procedure 16**

Subpart 16(a)(1)(E) or Fed. R. Crim. P. 16 sets forth the types of the information the government must disclose to the defendant upon his request:

> books, papers, documents, data, photographs, tangible objects, buildings or places, or copies or portions of any of these items, if the item is within the government's possession, custody, or control and:
> (i) the item is material to preparing the defense;
> (ii) the government intends to use the item in its case-in-chief at trial; or
> (iii) the item was obtained from or belongs to the defendant.

Fed. R. Crim. P. 16(a)(1)(E).

A defendant must make a *prima facie* showing of materiality before he is entitled to obtain requested discovery. *See United States v. Simpson*, 845 F.3d 1039, 1056 (10th Cir. 2017). "Neither a general description of the information sought nor conclusory allegations of materiality suffice; a defendant must present facts which would tend to show that the government is in possession of information helpful to the defense." *United States v. Lucas*, 841 F.3d 796, 804 (9th Cir. 2016). The term "defense" means an argument in response to the prosecution's case-in-chief, *i.e.*, an argument that refutes the government's claims that the defendant committed the crime charged. *United States v. Armstrong*, 517 U.S. 456, 462 (1996). To be material, it is not enough that the evidence sought "bears some abstract, logical relationship to the issues in the case … [r]ather a showing of materiality requires some indication that pretrial disclosure of the information sought would have enabled the defendant to significantly alter the quantum of proof in his favor." *United States v. Goris*, 876 F.3d 40, 44-45 (1st Cir. 2017). Establishing *prima facie* materiality is not a heavy burden; evidence is material when there is a strong indication that it "will play an important role in uncovering admissible evidence, aiding witness preparation, corroborating testimony, or assisting impeachment or rebuttal." *United States v. Lloyd*, 992 F.2d 348, 351 (D.C. Cir. 1993) (internal quotations omitted). Nonetheless, the threshold showing of materiality is essential because ordering the government to produce discovery absent such a

showing is inconsistent with Rule 16. *See United States v. Mandel*, 914 F.2d 1215, 1219 (9th Cir. 1990).

The scope of discoverable materials is limited by Rule 16(a)(2), which states in pertinent part, "this rule does not authorize the discovery or inspection of reports, memoranda, or other internal government documents made by an attorney for the government or other government agent in connection with investigating or prosecuting the case." Fed. R. Crim. P. 16(a)(2).

"At any time the court may, for good cause, deny, restrict, or defer discovery or inspection, or grant other appropriate relief." Fed. R. Crim. P. 16(d). Moreover, a "trial court can and should, where appropriate, place a defendant and his counsel under enforceable orders against unwarranted disclosure of the materials which they may be entitled to inspect." *Alderman v. United States,* 394 U.S. 165, 185 (1969). "The burden of showing 'good cause' is on the party seeking the order, and 'among the considerations to be taken into account by the court will be the safety of witnesses and others, a particular danger of perjury or witness intimidation, [and] the protection of information vital to national security[.]'" *United States v. Cordova*, 806 F.3d 1085, 1090 (D.C. Cir. 2015) (quoting Fed. R. Crim. P. 16(d) Advisory Committee's Note to 1966 Amendment to Former Subdivision (e)).

### 2. *Brady* and *Giglio*

In *Brady v. Maryland,* 373 U.S. 83 (1963), the Supreme Court held that "suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Id.* at 87. The Supreme Court recognized the obligation to disclose even in the absence of a defense request. *United States v. Agurs,* 427 U.S. 97, 107 (1976). Further, in *Giglio v. United States,* 405 U.S. 150, 154 (1972), the Supreme Court extended the prosecution's *Brady*

obligation to include the disclosure of evidence affecting the credibility of a witness. Such information and evidence is "material" under *Brady* "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Kyles v. Whitley,* 514 U.S. 419, 433 (1995) (quoting *United States v. Bagley,* 473 U.S. 667, 682 (1985) (opinion of Blackmun, J.)). The Supreme Court continues to reaffirm that prosecutors have an "affirmative duty to disclose evidence favorable to a defendant," *Kyles,* 514 U.S. at 432, and that "the prudent prosecutor will resolve doubtful questions in favor of disclosure." *Agurs,* 427 U.S. at 108; *Kyles,* 514 U.S. at 439.

### 3. The Jencks Act

Fed. R. Crim. P. 16(a)(2) likewise "prohibits discovery of statements by government witnesses or prospective government witnesses except as provided in the Jencks Act, 18 U.S.C. § 3500." *United States v. Tarantino*, 846 F.2d 1384, 1414 (D.C. Cir. 1988). "The Jencks Act entitles a federal criminal defendant to obtain any pretrial statement and report made by a government witness, but only *after* the witness has testified on direct examination at trial." *United States v. Nevels,* 490 F.3d 800, 803 (10th Cir. 2007) (emphasis in original). A witness "statement" is (1) a written statement made by the witness and signed or otherwise adopted or approved by him; (2) a stenographic, mechanical, electrical, or other recording or transcription thereof, that is a substantially verbatim recital of an oral statement made by the witness and recorded contemporaneously with the making of such oral statement; or (3) a statement or transcription thereof made by the witness to a grand jury. 18 U.S.C. § 3500(e).

The purpose of the Jencks Act is to protect the prosecution's files from unwarranted disclosure and to allow defendants materials usable for the purposes of impeachment. *United States v. Smaldone*, 544 F.2d 456, 460 (10th Cir. 1976). "The prosecution … must disclose

[statements] under the Jencks Act[] … in a manner allowing the defense a reasonable opportunity to examine it and prepare for its use in the trial." *United States v. Celis*, 608 F.3d 818, 835 (D.C. Cir. 2010) (internal quotations and citations omitted). The defendant bears the burden to show that materials qualify as "statements" and that the purported statements relate to the subject matter of the witness's testimony. *United States v. Castillo*, No. CR 15-0205 JH, 2015 WL 13651125, at *1 (D.N.M. Oct. 13, 2015).

**C.   DISCUSSION**

- All recordings of interviews of witnesses, '3-332 reports' of all interviews done and interview testimonies, and all notes taken by agents at the interview, or an affirmative statement that after checking with the investigative agency and agent, that all such evidence has been provided and no further evidence responsive to this request exists.

Mot. at 8.

To contextualize this request, Defendants contend that the Government has untimely produced evidence, including 2015 shipment information and declarations, a 2017 interview between law enforcement and Raed, and that Special Agent Ruiz's interview report with a witness remains outstanding. Defendants claim that the Government's purported delayed disclosures have impeded defense counselors' ability to prepare and cause Defendants "to believe that there could be outstanding reports" not disclosed. *Id*.

Defendants' request for "[a]ll recordings of interviews of witnesses, '3-332 reports' of all interviews done and interview testimonies," is denied. The Government explains that it has twice presented the investigative agency, the United States Fish and Wildlife Service (USFWS), with Defendants' requested discovery. Following the Government's most recent inquiry, the USFWS found reports related to "an additional potential witness." Resp. at 6. The Government says that it will produce the reports. Thus, the Government has twice inquired of the agency, produced

known records and reports of interviews, and says that it will continue to do so. This indicates that the Government has already disclosed that which is discoverable and in its possession.

Regarding the brothers' request for "all notes taken by agents at the interview," the Government responds that it already produced notes from an interview with Raed but that it is otherwise unaware of the existence of any other interview notes. Resp. at 7. Defendants' request implicates Fed. R. Crim. P. 16(a)(2)'s prohibition of discovery of statements by government witnesses or prospective government witnesses. Of course, "[a]n agent's rough interview notes may nevertheless be discoverable under *Brady* if the defendant shows that the notes are exculpatory and material," *Castillo*, 2015 WL 13651125, at *2 (citing *United States v. Sullivan*, 919 F.2d 1403, 1426-27 (10th Cir. 1990)), or if the notes are Jencks Act statements. Defendants, however, have not shown that any notes exist, or that such notes qualify as *Brady* or Jencks Act material. Should any such rough interview notes of law enforcement officers and agents come into the Government's possession, the Government is aware of its duty to review the notes to determine if any information in the notes is subject to disclosure under the Jencks Act, *Brady*, *Kyles*, and *Giglio*.

- Any and all surveillance video and records of undercover operations not already produced or an affirmative statement that after checking with the investigative agency and agent, that all such evidence has been provided and no further evidence responsive to this request exists.

Mot. at 9.

Defendants state that "while the government has produced some recordings, given its late production of relevant items, the defense needs to ensure it has all discovery before it can meaningfully assess the case, prepare pretrial motions and prepare for trial." *Id*. at 9-10. The Government responds that it has already produced material video and audio recordings, that it

8

again consulted with the USFWS, and that out of an abundance of caution it "anticipates providing additional records" even though it does not plan to use the records at trial because they are irrelevant. Resp. at 8. Given this statement by the Government, Defendants have not carried their burden of proof to show that discoverable records exist, so their request is denied.

- The Undercover Operations Proposals submitted in this case, as well as all Purchase of Information/Purchase of Evidence (POI/POE) forms and undercover books, as well as the audits performed regarding this case.

Mot. at 10.

Defendants state that "[u]pon information and belief," the USFWS must submit an approved proposal to run an undercover operation. *Id*. Because this case apparently involved a partial undercover operation, Defendants seek "books maintained on the operation as well as an audit performed," contending that this evidence bears on the credibility of the investigation and case agent, and that the evidence is relevant and material. *Id*.

Defendants' request is denied because it appears that the documents they seek qualify as a report, memorandum or other internal government document made by a government agent in connection with investigating or prosecuting the case, and therefore are not discoverable under Fed. R. Crim. P. 16(a)(2). But the Government will, as it states in its response, continue to "review any other documents relating to the undercover operations and produce any material exculpatory or impeachment information," and Jencks Act statements. Resp. at 8-9.

- The US Fish and Wildlife policy on recording people who do not know they are being recorded, as well as all 'consensual monitoring requests' and approvals in this case.

Mot. at 10.

Defendants state they need this evidence because it "bears on the credibility of the investigation and whether it was carried out in conformance with their own rules, which is

9

relevant to impeach the investigation and the agents involved." *Id*. at 10-11. The Government counters that Defendants should not be allowed to argue that "a law enforcement investigation was 'shoddy,' because it would divert the attention of the jury from the actual relevant issues at trial." Resp. at 8 (quoting *United States v. McVeigh*, 153 F.3d 1166, 1192 (10th Cir. 1998)).

Defendants have demonstrated a *prima facie* showing of materiality because the evidence is needed to assist with impeachment. While Defendants may not at trial speculate that the Government's investigation was "shoddy," *McVeigh*, 153 F.3d at 1192, at the pretrial stage Defendants simply seek to determine whether the quality of the Government's investigation produced unreliable evidence, which would be relevant at trial. *See id.* ("Admittedly, the quality or bias of a criminal investigation occasionally may affect the reliability of particular evidence in a trial, and hence, the facts surrounding the government's investigation may become relevant.") The Government indicates that it possesses the "USFWS consensual monitoring policy and requests," so the Government will turn over the information to Defendants. Resp. at 9.

- Memorandum of understanding (MOU) between USFWS and FBI/Customs/HSI/DHS/BIA or any other agency that governs the activities in this case.

Mot. at 11.

Defendant state that these memoranda are needed to determine USFWS agents' authority to search, arrest and make forfeitures. The Government opposes the request, saying that it has consulted with the USFWS and identified several memoranda that might be implicated by Defendants' request and determined that none are material to the defense. The Court agrees with the Government that the Defendants presented "conclusory allegations of materiality," *Lucas*, 841 F.3d at 804, without explaining how the requested discovery would refute claims in the Government's case-in-chief. Their request is denied.

- Early *Jencks* and all *Brady* and *Giglio* discovery.

Mot. at 12.

Defendants request an order compelling the Government to disclose early Jencks Act statements and early production of all evidence falling under *Brady* and *Giglio*. However, the Court cannot compel the early production of Government witness statements. *Nevels*, 490 F.3d at 803. Concerning *Brady* and *Giglio* material, the Government is already under an obligation to make such disclosures during pretrial discovery. *See Jordan*, 316 F.3d at 1252. To that end, the Government states that it has already produced evidence and witness statements, that it "will similarly not withhold grand jury transcripts of anticipated witnesses until closer to trial," and that it will "continue to produce any discoverable material that comes into its possession and has no intention of withholding any information until trial." Resp. at 11. The Court strongly encourages the Government to disclose Jencks Act statements and *Brady* and *Giglio* material well before trial to avoid trial continuances and delays.

- Cellphone and computer downloads obtained during the investigation, including from Nael Ali (Bates USFWS_001138; Galleria Azul 017060) and Mohamed Manassra (USFWS_001184) and any others not already produced, or an affirmative statement that after checking with the investigative agency and agent, that all such evidence has been provided and no further evidence responsive to this request exists.

Mot. at 12.

This request is denied as moot because the Government responded that it affirmatively checked with the USFWS and that based on that inquiry the Government has no responsive material in its possession.

- The 'open source documents' referred to in section IV.A.¶13.b of the Affidavit in Support of Search Warrant for 1405 Lincoln Ave. (bates no. WSFFWS_001911).

11

*Id*. at 13.

As background the for this request, the Government explains that shipments of Indian-style jewelry were allegedly made from Imad's Jewelry in the Philippines to I Jewelers Wholesale, Inc., located at 1405 Lincoln Avenue in Calistoga, California.[3] Defendant Iyad Aysheh is I Jewelers Wholesale Inc.'s agent. In addition, Defendant Raed Aysheh ran Golden Bear & Legacy LLC, which storefronts at the Lincoln Avenue address, and a person named "Ray" would allegedly sign for some of Philippine shipments. In a 2015 undercover buy at Golden Bear, Raed was captured in a recording as introducing himself as "Ray" and representing his goods as Indian-made. In October 2015, agents secured a warrant to search the Lincoln Avenue address. The warrant affidavit apparently referred to open source documents which Defendants seek to discover.

Defendants claim that the documents relate to the investigation and contributed to the ultimate probable cause determination. But this rather short explanation fails to explain how the documents would refute the Government's claims against them. The Government, on the other hand, provides a more thorough explanation that Defendants' request for the open source documents is based on their misunderstanding "that Raed was listed as an officer of I Jewelers" in open source databases even though California's publicly available records show that "Iyad … was associated with I Jewelers and Raed was associated with Golden Bear." Resp. at 13. Given that the information Defendants seek is publicly available, Defendants' request for an order compelling the Government to disclose the open source documents is denied.

- All statements (via report, recording, affidavit, notes, or other form) that Defendants or alleged co-conspirators made to alleged victims that the government claims are misleading or false, including complete statements

---

[3] The Government lists the address as 1406 Lincoln Avenue whereas Defendants list the address as 1405. This discrepancy is noted but it does not implicate the legal analysis.

>of what Defendants told Dr. Shapira. *See* (FWS 001834 to 001837) INV 2012204455, Al Zuni 3-332 Report by SA Stanford, dated 3/14/16 prepared on 4/7/2016.

Mot. at 14.

Rule 16(a)(1) lists the information that is subject to disclosure by the prosecution to the defendant. As relevant here, subparagraph (A) of Rule 16(a)(1) deals with a defendant's oral statement, while subparagraph (B) deals with a defendant's written or recorded statement. The rule provides that:

>(A) Defendant's Oral Statement. Upon a defendant's request, the government must disclose to the defendant the substance of any relevant oral statement made by the defendant, before or after arrest, in response to interrogation by a person the defendant knew was a government agent if the government intends to use the statement at trial.
>
>(B) Defendant's Written or Recorded Statement. Upon a defendant's request, the government must disclose to the defendant, and make available for inspection, copying, or photographing, all of the following:
>
>>(i) any relevant written or recorded statement by the defendant if:
>>• the statement is within the government's possession, custody, or control; and
>>• the attorney for the government knows--or through due diligence could know--that the statement exists;
>>
>>(ii) the portion of any written record containing the substance of any relevant oral statement made before or after arrest if the defendant made the statement in response to interrogation by a person the defendant knew was a government agent; and
>>
>>(iii) the defendant's recorded testimony before a grand jury relating to the charged offense.

Fed. R. Crim. P. 16(a)(1)(A)-(B).

According to the Government, it has already fulfilled or exceeded its obligations under subparts (A) and (B). Concerning written or recorded statements, the Government says that it has already produced Defendants' "false statements to their customers," some of which were "recorded when made or made in writing." Resp. at 14. The Government also has produced

13

"reports detailing the defendants' oral statements," *id.*, although it does not explain if these reports were generated based on agents' interviews with Defendants within the meaning of Rule 16(a)(1)(B)(ii). Given these representations by the Government, the Court believes that prosecutors have complied with their duties to disclose Defendants' written or recorded statements.

Concerning Defendants' oral statements for which there is no written record of the statements, Rule 16(a)(1)(A) requires the Government to disclose to the Defendants upon request the substance of any oral statements in response to interrogation if the Government intends to use the statements at trial. The Government states that some of Defendants' alleged false statements made to customers will be introduced at trial through customers' testimony. Such statements are not required to be disclosed because there is no showing that the oral statements were made "in response to interrogation by a person the defendant knew was a government agent." Fed. R. Crim. P. 16(a)(1)(A). *See United States v. Scott*, 223 F.3d 208, 212 (3d Cir. 2000) (stating that under Rule 16(a)(1)(A) "the government is not required to provide discovery of a defendant's unrecorded, spontaneous oral statements not made in response to interrogation.") (citation omitted); *United States v. Cochran*, 697 F.2d 600, 606 (5th Cir. 1983) ("There is no question that Cochran did not know McAnally was a government agent when they spoke on December 20 and 21. Cochran's statements thus do not come within the range of [Rule 16(a)(1)(A)].") (citation omitted).

- All documents and evidence related to victims of fraud not already produced, or an affirmative statement that after checking with the investigative agency and agent, that all such evidence has been provided and no further evidence responsive to this request exists.

Mot. at 14.

The Government states that it has already produced "all evidence of which it is aware regarding victims." Resp. at 15. But in response to Defendants' demand, the Government inquired of the USFWS to review its file and to produce any additional material. Should discoverable material come to light, the Government states that it will produce the discovery. This indicates that the Government has already disclosed that which is discoverable and that it will continue to do so. Again, the Court strongly encourages the Government to disclose materials that Defendants are entitled to well before trial to avoid disruptions and delays. The brothers' request is denied.

- Any and all written statements made by defendants or their businesses to any customers regarding authenticity of items purchased, or from any sales presented in this case. If no such evidence responsive to this request exists, then an affirmative statement stating so.

Mot. at 15.

As background for this request, Defendants explain that the Indian Arts and Crafts Board advises Indian art and craft buyers to ask sellers for written verification that a good is an authentic Indian product. Defendants say that "no written statements [regarding] authenticity of items purchased or from any sales presented" have been produced and they move for an order compelling the disclosure of such items. *Id*.

The Government responds that it has "produced all written statements by the defendants in its possession," and will continue to produce discoverable written statements. Resp. at 16. This indicates that the Government has already disclosed that which is discoverable and that it will continue to do so, so Defendants' request is denied.

**IT IS THEREFORE ORDERED that** Defendants' Joint Motion to Compel Specific Discovery **(ECF No. 180)** is **GRANTED in part** and **DENIED in part:** Defendants' request number 4 will be produced by the Government; in all other respects the motion is **DENIED**.

**IT IS SO ORDERED.**

_____
HONORABLE JUDITH C. HERRERA
Senior United States District Judge