IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

        Plaintiff,

vs.                                                                  CR. No. 17-370 JCH

IMAD AYSHEH, *also known as*
IMAD MANASSRA, IYAD AYSHEH,
NEDAL AYSHEH, RAED AYSHEH and
NAEL ALI,

        Defendants.


<u>**MEMORANDUM OPINION AND ORDER**</u>

      This case is before the Court on two motions. The first is the *Motion to Dismiss Count One and Corresponding Forfeiture Allegations* [Doc. 254] filed jointly by the four Aysheh Defendants (collectively, "Defendants"). The Government has filed its response [Doc. 263] and the Aysheh Defendants have filed their reply [Doc. 267]. In the motion, Defendants argue that Count One of the Indictment [Doc. 2] (1) fails to state an offense with respect to a conspiracy to smuggle and fraudulently import jewelry in violation of 18 U.S.C. §§ 542 and 545, and (2) fails to state an offense as to the entirety of Count 1, because the undenied operative facts show that Defendants lacked the specific intent to conspire to mislead the public or otherwise violate the law. After considering the law and the arguments of counsel, the Court concludes that the motion should be denied.

      The second motion before the Court is *Defendant Iyad Aysheh's Motion to Dismiss Count 2 of Indictment, Or In the Alternative for a Bill of Particulars* [Doc. 282]. In that motion, Defendant

Iyad Aysheh (hereafter, "Iyad")  argues that Count 2 of the Indictment should be dismissed because it fails to give him sufficient notice of what specific conduct is the basis for Count 2, which he contends should be dismissed or subject to a bill of particulars. The Government has filed its response [Doc. 290] and Iyad has replied. [Doc. 299]. The Court concludes that the motion to dismiss Count 2 should also be denied.

## FACTUAL BACKGROUND

The four remaining defendants in this case are brothers who work in the jewelry industry. The Court has set forth the factual background of the case in a previous opinion, *see* Doc. 227, and it incorporates those recitations herein.

The Indictment [Doc. 2] charges all four defendants in Count 1 with engaging in an unlawful conspiracy between approximately March 17, 2014, and October 28, 2015. According to Count 1, the conspiracy had six object crimes: (1) offering jewelry for sale as Indian-made when in fact it was not Indian-produced in violation of 18 U.S.C. § 1159, (2) money laundering in violation of 18 U.S.C. § 1956(a)(2)(A), (3) importing and smuggling Native American-style jewelry without the required country-of-origin marking in violation of 18 U.SC. §§ 542 and 545, (4) mail fraud in violation of 18 U.S.C. § 1341, (5) wire fraud in violation of US.C. § 1343, and (6) money laundering in violation of 18 U.S.C. § 1957.

Count 2 charges only Defendant Iyad Aysheh for a violation of the Indian Arts and Crafts Act ("IACA"), 18 U.D.C. § 1159, asserting that between June 1, 2015, and August 12, 2015, he

> did knowingly display and offer for sale for $1,000 and more, a good, specifically jewelry, in a manner that suggested that the good was Indian produced, an Indian product, and the product of a particular Indian and Indian tribe [] when in truth and in fact, as he there and then well knew and believed, the good was not Indian produced, an Indian product, and the product of a particular Indian and Indian tribe.

2

## LEGAL STANDARD

Defendants move to dismiss Counts 1 and 2 of the Indictment pursuant to Rules 12(b)(3)(B)(iii) and 12(b)(3)(B)(v) of the Federal Rules of Criminal Procedure. Rule 12(b)(3) provides that a defendant must raise the defense of a defect in the indictment—to wit, that the indictment fails to state an offense—by pretrial motion "if the basis for the motion is then reasonably available and the motion can be determined without a trial on the merits."

A criminal defendant enjoys the constitutional right "to be informed of the nature and cause of the accusation" against him. U.S. Const. amend. VI. In general, an indictment "must be a plain, concise, and definite written statement of the essential facts constituting the offense charged[.]" Fed. R. Crim. P. 7(c)(1). An indictment satisfies this standard "if it sets forth the elements of the offense charged, puts the defendant on fair notice of the charges against which he must defend, and enables the defendant to assert a double jeopardy defense." *United States v. Dashney*, 117 F.3d 1197, 1205 (10th Cir. 1997) (citation omitted); *United States v. Todd*, 446 F.3d 1062, 1067 (10th Cir. 2006). If those three standards are met, then the indictment "need not go further and allege in detail the factual proof that will be relied upon to support the charges." *United States v. Doe*, 572 F.3d 1162, 1173-74 (10th Cir. 2009) (quoting *United States v. Redcorn*, 528 F.3d 727, 733 (10th Cir. 2008)) (internal quotation marks omitted). The indictment, in fact, really need only "quote[ ] the language of a statute and include[ ] the date, place, and nature of illegal activity." *Id*. (quoting *Redcorn*, 528 F.3d at 733).

A defendant may file a pretrial motion alleging a defect in the indictment including failure to state an offense. *See* Fed. R. Crim. P. 12(b)(3)(B)(v). When a defendant files such a pretrial motion, the reviewing court should determine "whether the allegations in the indictment, if true, are sufficient to establish a violation of the charged offence." *United States v. Pope*, 613 F.3d 1255,

1260 (10th Cir. 2010) (citing *United States v. Todd*, 446 F.3d 1062, 1068 (10th Cir. 2006)). In its

analysis, the court must generally look to the plain language of the indictment and ignore extrinsic

factual evidence or attached exhibits. *See Todd*, 446 F.3d at 1067 (explaining that "[c]ourts should

[] avoid considering evidence outside the indictment when testing the indictment's legal

sufficiency"). The Tenth Circuit in *Dashney* summed up this area of law with a simple statement:

"An indictment need only meet minimal constitutional standards, and we determine the sufficiency

of an indictment by practical rather than technical considerations." 117 F.3d at 1205 (emphases

added).

## DISCUSSION

### I.      Count 1: Conspiracy to Fraudulently Import Jewelry Under 18 U.S.C. § 542

Defendants argue that the Indictment fails to properly allege a § 542 violation against them

for importing Indian-style jewelry manufactured by Imad's Jewelry in the Philippines without an

indelible country-of-origin marking. Defendants' argument stems from the multi-paragraph

structure of § 542. It provides, in pertinent part:

> Whoever enters or introduces, or attempts to enter or introduce, into the commerce
> of the United States any imported merchandise by means of . . . any false or
> fraudulent practice or appliance, or makes any false statement …, whether or not
> the United States shall or may be deprived of any lawful duties; or
>
> Whoever is guilty of any willful act or omission whereby the United States shall or
> may be deprived of any lawful duties accruing upon merchandise embraced or
> referred to in such invoice, declaration, affidavit, letter, paper, or statement, or
> affected by such act or omission—
>
> Shall be fined for each offense under this title or imprisoned not more than two
> years, or both.

Defendants contend that because the Government has alleged an omission—the lack of a country-

of-origin mark—the second paragraph applies. Pointing to the lack of any allegation that the

omission of the mark deprived the United States of lawful duties or that Defendants intended such a deprivation to occur, Defendants argue that the Indictment does not state an offense under § 542.

In response, the Government states that the Indictment fails to mention that the United States was deprived of lawful duties because it charges Defendants not under the second paragraph, but rather under the first paragraph of § 542, which expressly applies "whether or not the United States shall or may be deprived of any lawful duties." In support of its argument, the Government points out that the language of the indictment closely tracks the language of § 542's first paragraph. The Indictment charges Defendants with a conspiracy

> to willfully and knowingly **enter and introduce**, and **attempt to enter or introduce, into the commerce of the United States, imported merchandise**, that is, Indian-style jewelry manufactured by Imad's Jewelry in the Philippines, **by means of a false and fraudulent practice and appliance**, to wit, importing Indian-style jewelry manufactured by Imad's jewelry in the Philippines without an indelible country-of-origin marking ….

Doc. 2 at 3, ¶ 7(c) (emphasis added). The bolded language above closely tracks the language of the first paragraph of § 542 while bearing almost no resemblance to the language of the second paragraph. From this, the Court infers that the grand jury intended to charge Defendants under the first paragraph, not the second, and that the false and fraudulent practice with which Defendants are charged is importation of goods without the required country-of-origin marking. Because the first paragraph of § 542 applies whether or not the United States is deprived of lawful duties, the omission of an allegation to that effect is not fatal. Rather, the Indictment contains all the required elements of a crime under the first paragraph of § 542.

The Court concludes that the indictment properly charges Defendants under the first paragraph of § 542, and this portion of the motion to dismiss will be denied.

## II.      Count 1: Conspiracy to Smuggle Under 18 U.S.C. § 545

Defendants argue that the Indictment fails to state an offense of conspiracy to commit the offense of smuggling of goods under 18 U.S.C. § 545. That statute provides for prosecution of "[w]hoever fraudulently or knowingly imports or brings into the United States, any merchandise contrary to law, or receives, conceals, buys, sells, or in any manner facilitates the transportation, concealment, or sale of such merchandise after importation, knowing the same to have been imported or brought into the United States contrary to law …"

### A.      Knowing and Willful Disregard for the Law

According to Defendants, Count 1 of the Indictment fails to allege that Defendants acted with a knowing and willful disregard for the law when they imported jewelry without an indelible country-of-origin mark contrary to § 545. Defendants point to ¶ 7(c) of the Indictment, which states that they conspired to "willfully and knowingly enter and introduce . . . imported merchandise . . . by means of a false and fraudulent practice and appliance . . . without an indelible country-of-origin marking …in violation of 18 U.S.C. §§ 542 and 545."  They argue that these allegations do not assert that they knowingly violated the law in so doing and therefore the allegations lack the required specific intent. The Government, in turn, argues that the Indictment must only allege that the Defendants knew of the facts making their conduct unlawful and knew as a general matter that their conduct was contrary to law. Doc. 263 at 6.

The Court disagrees with Defendants on this question. As the Government points out, "courts ordinarily read a phrase in a criminal statute that introduces the elements of a crime with the work 'knowingly' as applying that word to each element." *Flores-Figueroa v. United States*, 556 U.S. 646, 652 (2009).  The Court can see no reason to adopt a different rule when construing an indictment. Paragraph 7(c) of the Indictment in this case begins with the phrase "willfully and

6

knowingly," thereby implying that the scienter requirement applies to each element that follows. If the Court were to conclude otherwise and adopt the argument advanced by Defendants, an indictment charging a crime under § 545 would need to repeat the words "willfully and knowingly" a second time before the phrase "in violation of . . ." That is not the law, and such repetition is not required.

The Indictment sets out the necessary *mens rea*, it describes the conduct that is contrary to law, it asserts that the Defendants knew about that conduct, and it enumerates the law they are accused of violating. There is no ambiguity.

**B.     Meaning of "Contrary to Law" Under § 545**

The Indictment charges Defendants with violating § 545 by importing Indian-style jewelry without an indelible country-of-origin marking contrary to law, the law in question being a regulation, 19 C.F.R. 134.43(c)(2). That regulation provides, in pertinent part:

> c) **Native American-style jewelry**—
> …
> (2) **Method of marking**. Except as provided in 19 U.S.C. 1304(a)(3) and in paragraph (c)(3) of this section, Native American-style jewelry must be indelibly marked with the country of origin by cutting, die-sinking, engraving, stamping, or some other permanent method. The indelible marking must appear legibly on the clasp or in some other conspicuous location, or alternatively, on a metal or plastic tag indelibly marked with the country of origin and permanently attached to the article.

Defendants raise the following two-part question: whether, under 18 U.S.C. § 545, a regulation promulgated by the United States Department of the Treasury (the "Treasury Department") constitutes a law for the purposes of the statute's "contrary to law" element; and if so, whether 19 C.F.R. § 134.43 *in particular* constitutes such a law. Stated another way, Defendants argue that while an alleged importation of Indian-style jewelry without indelible country-of-origin markings may have violated non-criminal customs regulations, such importation

7

was not "country to law" within the meaning of § 545 such that the Defendants would be subject to criminal liability.

Three Circuit Courts of Appeal have taken divergent approaches on the question of whether regulations constitute laws for the purposes of § 545's "contrary to law" requirement. First, in *United States v. Mitchell*, 39 F.3d 465, 476 (4th Cir. 1994), the defendant was charged with smuggling animal hides and horns into the country without declaring them to a Customs officer, filling out required forms, and showing the country of origin on a commercial invoice as required under federal regulations. Looking to the statute's plain meaning, the *Mitchell* court concluded that the word "law" is "commonly defined to include administrative regulations." *Id*. at 468. The court found nothing in the legislative history that suggested that the "contrary to law" provision should be limited to statutory violations, *id*. at 469, and concluded that the meaning of the phrase "contrary to law" is unambiguous. *Id*. at 468-69.  Thus, the *Mitchell* court declined to apply the rule of lenity. *Id*. at 470. Next, the court considered whether the Customs, Fish and Wildlife Service, and Department of Agriculture regulations at issue were of the type that fall under § 545. The court concluded that in order to have the force and effect of law, regulations must meet three criteria laid out in *Chrysler Corp. v. Brown*, 441 U.S. 281, 296-96 (1979): (1) they must be "substantive" or "legislative-type" rules that affect individual rights and obligations, not "interpretive rules" or general statements of policy; (2) they must have been promulgated according to a congressional grant of quasi-legislative authority, and (3) they must have been promulgated according to congressionally imposed procedural requirements. *Id*. at 470. The court found that the regulations at issue met all three requirements and therefore had the force and effect of laws that are within the phrase "contrary to law" in § 545. *Id*. at 471. Finally, the *Mitchell* court

8

rejected the argument that Congress could not impose liability for a felony crime when the regulations themselves provided for misdemeanor penalties for their violation. *Id*. at 472-476.

In contrast, in *United States v. Alghazouli*, 517 F.3d 1179 (9th Cir. 2008), the Ninth Circuit concluded that the term law "does not have a plain meaning that necessarily includes a 'regulation.'" *Id*. at 1184. After considering the meaning of "law" in the 1866, 1922, and 1930 Tariff Acts, as well as some older Supreme Court decisions[1], the Ninth Circuit concluded that Congress repeatedly reenacted the provision that is now § 545, "knowing that a criminal prohibition against violating a 'law' included a prohibition against violating a regulation when, but only when, a statute specified that a violation of that regulation was a crime."

Third, in *United States v. Izurieta*, 710 F.3d 1176 (11th Cir. 2013), the Eleventh Circuit rejected the Ninth Circuit's reasoning in *Alghazouli* as well as the Fourth Circuit's approach in *Mitchell*. The regulation in *Izurieta* established obligations for importers by setting forth "the general contractual terms between Customs and the importer regarding temporary release and storage of the imported goods, along with agreed-upon liquidated damages for non-compliance." *Id*. at 1183. The *Izurieta* court reasoned that the "lack of reference in 18 U.S.C. § 545 to violations of regulations does create some ambiguity and such ambiguity should be considered grievous where the text or history of the regulation creates a strong perception that a violation of the regulation will give rise to civil remedies only." *Id*. at 1181-82. Accordingly, the court applied the rule of lenity to conclude that charges of violating the regulation do not charge a crime under § 545. *Id*. at 1184.

---

[1] The Supreme Court cases the Ninth Circuit analyzed were *United States v. Eaton*, 144 U.S. 677 (1892) *and United States v. Grimaud*, 220 U.S. 506 (1911).

9

The Tenth Circuit has not addressed the question of whether a regulation generally (or 19 C.F.R. § 134.43 specifically) constitutes a "law" for purposes of § 545. However, one judge in the District of New Mexico has analyzed the issue (and considered the circuit decisions described above) and concluded that criminal liability does attach under 18 U.S.C. § 545 for failure to comply with 19 C.F.R. § 134.43. *See United States v. Sterling Islands, Inc*., 391 F. Supp. 3d 1027, 1052 (D.N.M. 2019) (Browning, J.). In that case, the court considered the text of § 545, including the meaning of the word "law" in 1866, when it was originally enacted (the statute has been subject to subsequent reenactments with "slight changes in phraseology."). *Id.* at 1050 (quoting *Roseman v. United States*, 364 F.2d 18, 25 n.9 (9th Cir. 1966). *See also id.* at 1051 (tracing the history of § 545 to 1866)). After reviewing various dictionaries and sources, the court concluded that in 1866, the plain meaning of the word "law" included regulations. *Id*. at 1051-52. It then went even further to reach the broad conclusion that under § 545 law "is an unqualified term that encompasses all states and agency-promulgated regulations," and in the absence of any express limitation by Congress was not restricted to customs-related laws, criminal regulations, "or even regulations with the force and effect of law according to *Mitchell*'s understanding." *Id*. at 1052. The *Sterling Islands* court also noted the lack of legislative history indicating that Congress did not intend "law" to include regulations. *Id* at 1054. The natural consequence of this analysis was the court's conclusion that 19 C.F.R. § 134.43 falls withing the ambit of § 545 regardless of whether one applies the *Mitchell* or *Izurieta* mode of analysis. *Id*. at 1056. Finally, the court concluded that despite the fact that CFR § 134.43 is a civil regulation, "it is within Congress' power and discretion to impose additional criminal penalties where violation of a civil regulation is willful." *Id*. at 1059.

Defendants correctly point out that *Sterling Islands* does not bind this Court. They then argue that that *Sterling Islands* was wrongly decided. In support, Defendants make three arguments: the *Sterling Islands* court's failure to account for the reach of the non-delegation doctrine, its misunderstanding of the word "law," and its failure to reconcile its interpretation of § 545 with 19 U.S.C. § 1304(1). They then argue that the Court should find § 545 to be ambiguous and apply the rule of lenity.

### 1. Non-delegation doctrine

"The nondelegation doctrine is rooted in the principle of separation of powers that underlies our tripartite system of Government." *Mistretta v. United States*, 488 U.S. 361, 371 (1989). While the Constitution forbids Congress from "delegat[ing] its legislative power to another branch of Government," it "does not prevent Congress from seeking assistance, within proper limits, from its coordinate Branches." *Touby v. United States*, 500 U.S. 160, 165 (1991). This reflects "a practical understanding that in our increasingly complex society, replete with ever changing and more technical problems, Congress simply cannot do its job absent an ability to delegate power under broad general directives." *Mistretta*, 488 U.S. at 372. A delegation is "constitutionally sufficient if Congress clearly delineates the general policy, the public agency which is to apply it, and the boundaries of this delegated authority." *Am. Power & Light Co. v. SEC*, 329 U.S. 90, 105 (1946). The Tenth Circuit has noted that while 90 years ago the doctrine was used twice to strike down a statute, in modern times, "the nondelegation doctrine is largely 'limited to the interpretations of statutory texts, and, more particularly, to giving narrow constructions to statutory delegations that might otherwise be thought to be unconstitutional.'" *United States v. Cotonuts*, 633 F. Appx. 501, 505-066 (10th Cir. 2016) (quoting *Mistretta*, 488 U.S. at 373 n.7). "The

constitutional question is whether Congress has supplied an intelligible principle to guide the delegee's use of discretion." *Gundy v. United States*, — U.S. —, 139 S. Ct. 2116, 2123 (2019).

The Department of the Treasury enacted the regulation at issue here, 19 C.F.R. 134.43, in accordance with 19 U.S.C. § 1304(a). In that statute, Congress provided that "every article of foreign origin  . . . imported into the United States shall be marked in a conspicuous place as legibly, indelibly, and permanently as the nature of the article [] will permit in such manner as to indicate to an ultimate purchaser in the United States the English name of the country of origin of the article." Section 1304(a) then goes on to empower the Secretary of the Treasury to enact regulations to give the statute force and effect according to the specific nature of the wide variety of imported goods in question. Section 1304(l) provides for criminal penalties for anyone who "defaces, destroys, removes, alters, covers, obscures, or obliterates any mark" required under § 1304. Thus, 19 U.S.C. § 1304 is a criminal provision that delegates to the Department of the Treasury the power to enact regulations regarding the requirement of marking of foreign goods for importation. Thus, Congress properly delegated power to the executive branch to make the regulation, 19 C.F.R. § 134.43, that provides the underpinning for the crime of smuggling imported Native American-style jewelry without an indelible country-of-origin mark, which is one of the object crimes of the conspiracy charged in Count 1.

The Defendants' argument regarding the nondelegation doctrine is somewhat unclear, but it appears that they object to being charged under 18 U.S.C. § 545, when in fact Congress used 19 U.S.C. § 1304 to delegate authority to the executive branch to enact the regulation Defendants stand accused of violating. *See* motion, Doc. 254 at 10 ("19 U.S.C. § 1304 is the legislative act laying down an 'intelligible principle' to which the Department of the Treasury may exercise

delegated authority to regulate customs. Section 545, on the other hand, does not. Section 545 is not the source of authority for the creation of the customs regulations and predictably provides no guidance to the agency regarding executive discretion regarding criminal conduct."). They also contend that interpreting § 545 to make the deliberate violation of any customs regulation a crime means that the executive branch can criminalize even the most trivial customs violation. *See* reply, Doc. 267 at 6. In their view, the Court should construe Congress' delegation of power, and therefore § 545's "contrary to law" provision, more narrowly.

As noted, 18 U.S.C. § 545 is a criminal law of general applicability that punishes those who act "fraudulently or knowingly" by importing merchandise "contrary to law." Congress did not define "contrary to law" in § 545, but in 19 U.S.C. § 1304 Congress not only required that imported goods be marked with their country of origin, but also authorized the executive branch to issue regulations—including 19 C.F.R. § 134.43— regarding the manner and means of such markings. Therefore, the regulation at issue was made under powers properly delegated by Congress and does not run afoul of the non-delegation doctrine.

### 2. Meaning of the word "law" as it relates to regulations

Defendants argue that 19 C.F.R. § 134.43 is not a law that falls within the phrase "contrary to law" under 18 U.S.C. § 545. Defendants look to two older Supreme Court cases and one Eighth Circuit case arising from the District of New Mexico, *Estes v. United States*, 227 F.  818 (8th Cir. 1915), before the Tenth Circuit Court of Appeals was established.

In *United States v. Eaton*, 144 U.S. 677 (1892), through an enabling statute Congress delegated power to the commissioner of internal revenue to made "needful regulations" concerning the importation of oleomargarine, an agricultural product. At that time 18 U.S.C. § 545 had not

yet been enacted, and there was no applicable federal criminal statute with the phrase "contrary to law" or similar language that applied. The defendant in *Eaton*, a wholesale oleomargarine dealer, was convicted of violating a bookkeeping regulation promulgated under the Oleomargarine Act of 1886 and convicted of a crime under § 18 of that statute, which provided criminal penalties for anyone who "shall knowingly or willfully omit, neglect, or refuse to do, or cause to be done, any of the things required by law in the … conducting of his business." *Eaton*, 144 U.S. at 685. The Supreme Court concluded that under the circumstances, violation of a non-criminal regulation was not sufficient for charging a criminal offense because there was not "sufficient statutory authority [] for declaring any act or omission a criminal offence." *Id*. at 688. However, because *Eaton* did not involve § 545 or its predecessor, nor did it interpret the phrase "contrary to law" in a criminal statute, it has little relevance here.

Another case cited by Defendants, *United States v. Grimaud*, 220 U.S. 506 (1911), involved grazing of sheep on federal land, which was regulated by the Department of Agriculture. The Supreme Court recognized that it would be impracticable for Congress to address the "various and varying details of management" of grazing rights. *Id*. at 514. Thus, Congress had delegated regulatory power to the Department of Agriculture and specified in the Forest Reserve Act that "any violation of the provisions of this act or such rules and regulations shall be punished" as a criminal offense. The regulation at issue prohibited grazing without a permit. The Court found: "The Secretary [of Agriculture] did not exercise the legislative power of declaring the penalty or fixing the punishment for grazing sheep without a permit, but the punishment is imposed by [Congress through] the [Forest Reserve Act] itself." *Id*. at 523. Thus, the *Grimaud* court concluded that the executive branch acted properly within the power delegated to it by Congress, and that Congress had identified the resulting rules and regulations whose violation was punishable as a

14

crime under the statute at issue. However, *Grimaud* did not address the question presented here, which is whether Congress may enact a criminal statute of general applicability punishing fraudulent and knowing conduct that is "contrary to law" without specifying the laws to which it refers. In other words, although the *Grimaud* court found that Congress and the executive branch had both acted properly, it did not go so far as to say that those methods were the sole way in which Congress could punish a wrongdoer for violation of a regulation.

Next, Defendants cite *United States v. Estes*, 227, F. 818 (8th Cir. 1915), a case involving the importation and inspection of livestock., which Congress had authorized the Department of Agriculture to regulate. *Id*. at 820. In a separate statute, Congress made violation of the resulting regulations punishable as a misdemeanor. *Id*. at 821. The defendants had failed to comply with those regulations when they brought cattle into the United States via Mexico. *Estes* involved Rev. Stat. § 3082, the predecessor to 18 U.S.C. § 545, which contained the phrase "contrary to law." *Id*. at 819. The *Estes* decision affirms that a regulation can be a "law" for purposes of § 545. The court reasoned that because the regulations were "fully authorized by law, and their violation made punishable by law, … it must be held, we think, that it was proper to allege in the indictment that the cattle in question had theretofore been imported  . . . contrary to law…" *Id*. at 821-22. As a result, Defendants argue that this Court is bound by *Estes* to conclude that only regulations whose violation is a crime may be considered "laws" under § 545.

As the Court noted, Defendants' motion to dismiss raises the issues of whether at least under some circumstances the violation of a regulation can serve as the basis of a criminal charge under § 545, and if so whether 19 C.F.R. § 134.43(c)(2) in particular may do so. *Grimaud*, *Estes*, *Mitchell*, and *Izurieta* answer the first part of that question in the affirmative, and this Court agrees. *See also Sterling Islands*, 391 F. Supp. 3d at 1055-56 (concluding that both the legislative history

15

and plain meaning of § 545 suggest that a "law" may include a regulation). It is well established that though § 545's legislative history and judicial precedent that a "law" can include regulations, at least under certain circumstances. That leaves only the question of whether 19 C.F.R. § 134.43(c)(2) in particular is a law under § 545.

The Court finds the *Mitchell* approach to be persuasive. Specifically, it concludes that 19 C.F.R. § 134.43 has the force and effect of law because it meets all three *Chrysler* criteria: (1) it is a "substantive" or "legislative-type" rules that affects an individual importer's obligations, and it is not a mere "interpretive rule" or general statement of policy; (2) it was promulgated according to a congressional grant of quasi-legislative authority, and (3) it was promulgated according to congressionally imposed procedural requirements. Defendants do not dispute this. It therefore has the force and effect of a law that is within the phrase "contrary to law" in § 545. The Court concludes that a violation of 19 C.F.R. § 134.43 is punishable by § 545.

As noted above, the *Sterling Islands* court took a different approach, concluding "it is not necessary that a separate statute make the regulations at issue criminally punishable, for them to qualify as laws for the contrary-to-law provision." 391 F. Supp. 3d at 1055. The court looked to a district court case, *United States v. Chesbrough*, 176 F. 778 (D.N.J. 1910), in which the court found that smuggling in violation of a strictly civil statute qualified as an action taken "contrary to law" under Rev. Stat. § 3082. The *Chesbrough* court, like the court in *Sterling Islands*, gave great weight to the fact that the defendant was charged with violating the civil law with criminal scienter—that is, fraudulently or knowingly. Further, *Sterling Islands* recognized that the *Chesbrough* court understood the meaning of the smuggling statute: "Judge Longyear's contemporaneous interpretation of the original smuggling statute suggests that it intended to target importation or

Case 1:17-cr-00370-JCH-LF   Document 306   Filed 06/05/23   Page 17 of 22

entry of goods into the United States done by means or in a manner contrary to proper importation."

391 F. Supp. 3d at 1055. Taking all of this into account, *Sterling Islands* concluded:

> Considering this intention and the fact that Congress has reenacted the smuggling statute multiple times since 1866 without excluding regulations, despite almost a century of Courts of Appeals precedent holding that "law" in the statute includes regulations, the Court concludes that the legislative history does not contradict the statute's plain meaning, which unambiguously indicates that "law" includes "regulations" for 18 U.S.C. § 545's purposes.

*Id*. at 1055-56. Furthermore, the scienter element of § 545 not only requires the act to be committed "fraudulently or knowingly," but also distinguishes criminal conduct under that section from those who lack criminal intent and therefore will be subject to only administrative remedies. In that way, the statute does not criminalize otherwise innocent conduct. The Court therefore also agrees with *Sterling Islands*' conclusion that § 545 punishes an importer or smuggler's knowing and willful disregard of the law—in this case, 19 C.F.R. § 134.43—in bringing merchandise into the United States without the required country-of-origin markings. 391 F. Supp.3d at 1052.

However, because the question before this Court is whether 19 C.F.R. § 134.43 is a law within the meaning of § 545, the Court expresses no opinion as to whether any other regulation meets that definition.

### 3. Effect of 19 U.S.C. § 1304(1)

Defendants argue that this Court should not follow the reasoning of *Sterling Islands* because it renders 19 U.S.C. § 1304(l) superfluous. As previously noted, that particular statute provides for criminal penalties for anyone who removes or obscures the country-of-origin mark on imported goods. According to Defendants, by enacting a statute criminalizing the intent to conceal information by removing country-of-origin marks, while choosing not to impose a

criminal penalty for importing Indian-style jewelry without such marks in the first instance, shows Congress' intent.

First, Defendants' argument is moot because this Court has concluded that 19 C.F.R. § 134.43 is a law not only under the reasoning of *Sterling Islands*, but also under the approach used by *Mitchell*. Going a step further, however, the Court rejects this argument because it agrees with the *Sterling Islands* court that the legislative history shows that in enacting § 545, Congress showed that it intended to criminalize any fraudulent or knowing violation of laws governing the importation of goods into the United States. The fact that Congress later enacted an additional statute that criminalized the removal of country-of-origin marks does not change the intent it had in enacting § 545 in the first instance.

### 4. Rule of Lenity

The rule of lenity is a substantive canon of construction applied in statutory interpretation cases involving criminal laws. The rule dictates that "when there are two rational readings of a criminal statute, one harsher than the other, we are to choose the harsher only when Congress has spoken in clear and definite language." *McNally v. United States*, 483 U.S. 350, 359-60 (1987); *see also United States v. Universal C.I.T. Credit Corp.*, 344 U.S. 218, 222 (1952) ("We should not derive criminal outlawry from some ambiguous implication."). "To invoke the rule, we must conclude that there is a grievous ambiguity or uncertainty in the statute." *Muscarello v. United States*, 524 U.S. 125, 138 (1998). Having concluded, like the *Mitchell* and *Sterling Islands* courts, that 18 U.S.C. § 545 is not ambiguous, the Court declines to apply the rule of lenity.

## III.    Count 1: Evidence of Conspiracy Regarding All of Count 1

To prove a conspiracy, the government must show that "(1) two or more persons agreed to violate the law, (2) the defendant knew the essential objectives of the conspiracy, (3) the defendant

knowingly and voluntarily participated in the conspiracy, and (4) the alleged co-conspirators were interdependent." *United States v. Pickel*, 863 F.3d 1240, 1251 (10th Cir. 2017) (brackets and quotations omitted).

Defendants argue that Count 1 should be dismissed in its entirety under Rule 12(b)(3) because Count 1 "can be determined without trial on the merits," as required by that Rule. Doc. 254 at 23. Further, they contend that the Court "may entertain facts outside the indictment when the operative facts are undenied." *Id*. Defendants list four categories of operative facts that they claim to be undisputed which require dismissal of Count 1: (1) the Defendants never made any statements suggesting an agreement to violate the law; (2) the business arrangements and transactions among the Defendants are consistent with the lawful manufacture and sale of imported Indian-style jewelry, (3) none  of the Defendants was aware that the jewelry was required to be marked indelibly with the country of origin; and (4) none of the Defendants had any expectations or awareness of how any other Defendant would display or represent the jewelry to customers. Doc. 254 at 23. Defendants contend that these facts show a lack of agreement among them to violate the law, as well as their lack of specific intent to do so. Therefore, they contend that Count 1 must be dismissed.

On the other hand, the Government contends that the facts are not undisputed, and that the Court should not look at any facts outside the four corners of the indictment in any case.

This Court has previously noted in this case that in evaluating a motion to dismiss it is significantly constrained and generally limited to the allegations on the face of the Indictment. *See United States v. Aysheh*, No. 1:17-CR-00370-JCH, 2019 WL 1877178 at *1 (D.N.M. Apr. 26, 2019) (unpublished). As the Government points out, a court may consider evidence outside the indictment under the following rare circumstance: (1) the operative facts are undisputed, (2) the

Government does not object to the court's consideration of those facts, and (3) the court can determine from those undisputed facts that the Government cannot prove its case as a matter of law. *United States v. Hall*, 20 F.3d 1084, 1088 (10th Cir. 1994); *United States v. Chavez*, 29 F.4th 1223, 1226 (10th Cir. 2022). Here, the operative facts are disputed, and the Government does object to the Court considering facts outside the Indictment. Accordingly, this portion of the motion to dismiss also will be denied.

## IV.  Count 2: Iyad's Motion to Dismiss Under Rule 12

Iyad moves to dismiss Count 2, under which he is the sole defendant, on the grounds that its "barebones recitation of the statute fails to put [him] on constitutionally sufficient notice of what specific conduct he engaged in to warrant being charged ..." Doc .282 at 1-2. Therefore, he asks the Court to dismiss Count 2, or in the alternative order the Government to provide a bill of particulars. For several reasons, the motion should be denied.

First, Count 2 of the indictment is sufficient if it "sets forth the elements of the offense charged, puts the defendant on fair notice of the charges against which he must defend, and enables the defendant to assert a double jeopardy defense*." United States v. Washington*, 653 F.3d 1251, 1259 (10th Cir. 2011). In addition to the IACA charging language quoted above, the Indictment alleges:

> From on or about June 1, 2015, and continuing to on or about August 12, 2015, the defendant, IYAD AYSHEH, sold $5,102 worth of Indian-style jewelry manufactured by Imad's Jewelry, as genuine Indian jewelry to M.A., owner of S.F.A.R., Inc., an Indian-style jewelry store, located in Santa Fe, New Mexico.

Doc. 2 at 12, ¶ 17z. Count 2 meets each of the requirements in *Washington* because it sets forth the elements of the offense by describing the alleged illegal conduct. In addition, it puts Iyad on fair notice of the charge against him because it tells him when the conduct occurred, and it

describes the nature of conduct. Finally, it is specific enough to allow him to assert a double jeopardy defense. Accordingly, the Court concludes that Count 2 states an offense.

Although Iyad argues that he is entitled to more meat (in the form of factual allegations as to the exact day he violated the IACA, to whom he allegedly offered or sold a piece of jewelry, what jewelry he offered, or how he allegedly falsely suggested it was an Indian product when in fact it was not) on the bones of Count 2, the law does not require the factual detail that he craves. As explained in *Doe*, an indictment "need not go further and allege in detail the factual proof that will be relied upon to support the charges." 572 F.3d at 1173-74.  The indictment, in fact, really need only "quote[ ] the language of a statute and include[] the date, place, and nature of illegal activity." *Id*. (quoting *Redcorn*, 528 F.3d at 733). *See also United States v. Akers*, 215 F.3d 1089, 1101 (10th Cir. 2000). Count 2 closely tracks the language of the IACA and includes the date, place, and nature of the alleged crime.

Second, the factual allegations outside the four corners of the indictment are not grounds for dismissal of Count 2. As previously discussed, a court may grant a motion to dismiss based on facts outside the indictment only when three requirements are satisfied: the operative facts are undisputed, the Government does not object to the court's consideration of those facts, and the court can determine from those undisputed facts that the Government cannot prove its case as a matter of law. *United States v. Hall*, 20 F.3d 1084, 1088 (10th Cir. 1994). In this instance, Iyad cannot show that any of the three has been met. A review of the briefs shows that there are key facts in dispute, the Government does object to consideration of facts outside the indictment, and whether or not the Government can prove its case cannot yet be determined.

Third, given the sufficiency of the indictment discussed above, a bill of particulars is unnecessary. "It is not the function of a bill of particulars to disclose in detail the evidence upon

21

which the government will rely at trial." *United States v. Wright*, 826 F.2d 938, 944 (10th Cir. 1987) (citation omitted). And as the Tenth Circuit has noted, when discovery supplies the information necessary to allow the defendant to prepare his defense, a bill of particulars is not warranted. *United States v. Ivy*, 83 F.3d 1266, 1282 (10th Cir. 1996). Iyad does not suggest that he has been unable to obtain adequate discovery over the last six years.

Finally, the motion for a bill of particulars is untimely. Rule 7(f) provides that a "defendant may move for a bill of particulars before or within 14 days after arraignment," or at a later time with leave of court. The indictment was filed in February of 2017. Six years later, in April of 2023, Iyad filed his motion for bill of particulars. He filed his motion just three months before the current July 17, 2023, trial setting. Iyad provides no explanation for the delay, nor does he explain why a bill of particulars is needed after the parties have engaged in extensive discovery.

For all the foregoing reasons, the motion to dismiss Count 2 will also be denied.

**IT IS THEREFORE ORDERED** that the *Motion to Dismiss Count One and Corresponding Forfeiture Allegations* [Doc. 254] is **DENIED,** and *Defendant Iyad Aysheh's Motion to Dismiss Count 2 of Indictment, Or In the Alternative for a Bill of Particulars* [Doc. 282] is also **DENIED**.

_____
**UNITED STATES DISTRICT JUDGE**

22