IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

      Plaintiff,

vs.                                                                      CR. No. 17-370 JCH

IMAD AYSHEH, *also known as*
IMAD MANASSRA, IYAD AYSHEH,
NEDAL AYSHEH, RAED AYSHEH and
NAEL ALI,

      Defendants.

### MEMORANDUM OPINION AND ORDER

      The Government has filed three motions in limine (ECF Nos. 443, 444, 445). The Court will address them in the order in which they were filed.

I.     **United States' Notice of Trial Exhibit and Testimony About Technical and Commercial Feasibility of Indelible Marking**

      The Government notes that it intends to offer evidence at trial of Native American-style jewelry that was imported into the United States from the Philippines without any indelible markings of the country of origin on the jewelry itself.[1] Gov. Notice 1, ECF No. 443. It is the Government's theory that under 19 C.F.R. § 134.43, this jewelry should have been marked with its country of origin unless it was "not technically or commercially feasible to mark [the jewelry] in the manner specified." *See id.* at 1-2; 19 C.F.R. § 134.43(c)(3). To show that it was, in fact, commercially and technically feasible to mark this type of jewelry with the country of origin, the

---

[1] While the Government labels this as a "Notice," it is essentially a motion in limine, and the Court will construe it as such.

Government would offer jewelry of similar size and style clearly marked with the country of origin from a jewelry business known as Silver Star (the "Silver Star jewelry"). *See* Gov. Notice 2. The Government offers this to prove that there was no valid reason why the country of origin was not marked on the jewelry in this case, in violation of 19 C.F.R. § 134.43. *Id.*

Defendants argue that the marked Silver Star jewelry is not relevant to whether it was commercially or technically feasible to mark the jewelry in this case. Defs.' Resp. 2, ECF No. 452. They contend that the determination of whether it was feasible to mark the pieces of jewelry at issue here should be made by inspecting those specific pieces of jewelry and their specific sizes, shapes, and designs. *Id.* According to the Defendants, comparing the jewelry at issue here to "a random earring purchased from an entirely different company" does not add any probative value. *Id.*

In the alternative, the Defendants argue that even if the Silver Star jewelry has probative value, the probative value is outweighed by the danger of unfair prejudice, misleading the jury, and confusing the issues. *Id.* Specifically, the Defendants argue that unless the government calls the Silver Star jewelry manufacturer as a witness, there is no admissible evidence showing how, when, or where the Silver Star jewelry was made and marked with its country of origin. *Id.* at 2-3. Further, Defendants contend that the marked Silver Star jewelry might mislead the jury to believe that the country-of-origin marking requirement is common knowledge in the jewelry industry when it is not. *Id.* at 3. Finally, Defendants assert that it would be unfair to admit this evidence when the Court previously excluded a portion of testimony the Defendants wished to present from an expert witness about factual differences between how other jewelry manufacturers marked their imported Native American-style jewelry in similar prosecutions. *Id.*; *see* Mem. Op. & Order 9, ECF No. 322.

This Court agrees with the Government that this evidence is relevant and does not believe its probative value is "substantially outweighed" by the dangers of unfair prejudice or misleading the jury. *See* Fed. R. Evid. 401, 403. The fact that another manufacturer of jewelry of a similar shape, style, and size, was able to mark its jewelry with the word "Philippines" tends to show that it was commercially and technically feasible for the Defendants to do so, surpassing the low bar of materiality required for admission under Rule 401. *See* Fed. R. Evid. 401. Any concerns about whether the Silver Star jewelry is similar enough to the jewelry at question in this case to serve as an appropriate comparison is a concern about the weight of the evidence, a topic appropriate for cross-examination and the jury's consideration. *See Gunning v. Cooley*, 281 U.S. 90, 94 (1930).

Finally, the previously excluded expert testimony that the Defendants reference is distinguishable from the evidence here. Defendants wished to have an expert in accounting and fraud examination opine as to how the jewelry at issue in this case differed from the jewelry at issue in other Indian Arts and Crafts Act ("IACA") cases. *See* Mem. Op. & Order 8, ECF No. 322. The Court held that this opinion should be excluded because the expert had no background in fraud relating to Native American goods, sales of Native American products, or the Native American jewelry industry—her knowledge of fraudulent practices in the Native American jewelry industry stemmed exclusively from reviewing the pleadings in other IACA cases. *Id.* at 8-9. This was an issue pertaining to the reliability of expert witness testimony, which is very different from the question of relevance presented here. Accordingly, the Court will permit the Government to offer the Silver Star jewelry as evidence.

**II.    United States' Motion in Limine to Admit Evidence of Defendants' Prior Jewelry Business Experience**

In its motion, the Government asks for a pretrial ruling that evidence about the Defendants' pre-indictment years of experience in the Native American jewelry industry is relevant. Gov. Mot. Lim. 1, ECF No. 444; Gov. Reply 1, ECF No. 456. Specifically, the Government refers to evidence that the Defendants had been in the Native American jewelry business for at least a decade before the period alleged in the indictment and ran a jewelry workshop in Gallup, New Mexico. Gov. Mot. Lim. 1-2. The Government contends that this is relevant to show the Defendants' knowledge of the industry and motive, especially when considered in conjunction with the statement Imad Aysheh made to a border patrol agent that the reason he had a jewelry business in the Philippines was for "cheap labor." *See id.* at 2. Additionally, the Government argues that this experience is relevant specifically to Raed Aysheh who it alleges used his past experience in the industry as part of his pitch to sell the jewelry at issue in this case. *Id.* at 3.

The Defendants argue that the Government's request is too broad and improperly lumps the Defendants' experiences together instead of considering them individually. Defs.' Resp. 1-2, ECF No. 451. The Defendants also contend that the evidence about jewelry manufacturing in the Philippines would misrepresent the purpose of the IACA, which does not criminalize the manufacturing of Native American products by non-Native people but instead criminalizes lying about the origin of these products. *See id.* at 3-4; 18 U.S.C. § 1159.

While this Court agrees that the Defendants' preindictment experience with Native American jewelry is relevant to show the Defendants' knowledge and motive, the Government has not provided the Court with enough specific information about the evidence it intends to offer for the Court to make an informed ruling. Based on the record, the Government's pieces of evidence are the Defendants' years of experience in the Native American jewelry industry, their jewelry workshop in Gallup, New Mexico, and Imad Aysheh's statement about "cheap labor." The

4

Government does not explain how these pieces of evidence are relevant to each individual Defendant. The Court shares the Defendants' concerns that granting this broad request without more information about the evidence itself might result in the Defendants' experiences being improperly lumped together. Accordingly, the Court will take this request under advisement and rule when the issue arises.

### III. United States' Motion in Limine to Preclude Evidence Concerning 19 C.F.R. § 1304(j)

In this motion, the Government seeks an order prohibiting the Defendants from offering evidence of federal regulation 19 C.F.R. § 1304(j) and from suggesting to the jury in any manner that U.S. Fish and Wildlife Service ("USFWS") personnel violated this law with respect to the jewelry in this case. *See* Gov. Mot. Lim. 1, ECF No. 445.

19 C.F.R. § 1304(j), in relevant part, states that "[n]o imported article held in customs custody for inspection, examination, or appraisement shall be delivered until such article and every other article of the importation (or their containers), whether or not released from customs custody, shall have been marked in accordance with the requirements of this section." Defendants argue that this regulation should be offered into evidence to show that USFWS agents violated the law when they inspected packages of jewelry shipped from Imad's Jewelry in the Philippines, noticed that the jewelry was not marked with the country of origin, and allowed the packages to be delivered anyway. Defs.' Resp. 2, ECF No. 450. They assert that this evidence is admissible to impeach the USFWS agents who are expected to testify by showing their bias against Defendants. *Id.* According to the Defendants, the USFWS agents violated the law to further their own investigation and denied the Defendants the opportunity to correct their error of failing to mark the jewelry with its country of origin—the basis of this prosecution. *Id.* at 1.

5

The Government, on the other hand, points to USFWS's inspection process to explain why USFWS agents did not violate 19 C.F.R. § 1304(j). *See* Gov. Reply 2-3, ECF No. 454. USFWS agents engaged in two types of inspections of the shipments of jewelry at issue here. The first category of inspections were routine import inspections by USFWS agents who were not criminal investigators; the second were case specific inspections requested by law enforcement agent Russell Stanford. *Id.* at 2. With regard to the case specific inspections, Special Agent Stanford arranged for two special inspections of packages shipped from Imad's Jewelry to determine whether the Defendants were engaged in a scheme to pass off non-Native American-made jewelry as Native American-made. *See* Gov. Mot. Lim. 4, ECF No. 445. USFWS agents opened and photographed the contents of the packages involved in these two inspections. *Id.* Although USFWS agents observed that the jewelry was not marked with country-of-origin markings, they did not stop the packages from being delivered to their final destinations. *Id.* The Government argues that as part of the investigation into Defendants, the USFWS investigators had every right to let the shipments continue to their delivery addresses so that the agents could determine whether the jewelry would be displayed and sold in a manner that violated the IACA. *Id.* at 14.

Regarding the routine import inspections, USFWS protocol and procedures do not require inspectors to open and examine every item. *Id.* at 2. As noted by the Government, the high volume of merchandise entering the United States requires that USFWS limit visual inspections to high priority imports like living creatures likely to spread disease or commonly trafficked animals or animal components. *Id.* The Government intends to offer records from the USFWS database showing that aside from the two inspections arranged by Special Agent Stanford, the other packages shipped from Imad's Jewelry in the Philippines to the United States fell into this category and were not visually inspected. *Id.* at 5. Accordingly, the Government argues that USFWS agents

6

were following protocol when they did not review each piece of jewelry shipped from Imad's Jewelry for a country-of-origin marking. *See id.* at 14.

Thus, the Government contends that the USFWS agents did not violate 19 C.F.R. § 1304(j) in either their routine or case specific inspections, resulting in no evidence of bias against the Defendants. *See* Gov. Reply 5, ECF No. 454. The Government adds that even if USFWS agents technically violated the law, these technical violations would not bear on their testimonial credibility because it is not inherently dishonest to clear shipments for entry into the United States in accordance with agency procedure. *Id.*

The Court agrees with the Government. It is not clear how the USFWS agents' potential violation of 19 C.F.R. § 1304(j) tends to show any bias on part of the investigators, as Defendants do not offer any evidence of bias beyond the criminal investigator not informing the Defendants that their jewelry was imported contrary to law. Defendants assert that the choice of the criminal investigators to violate 19 C.F.R. § 1304(j) to make a case against the Defendants shows their bias. However, the Tenth Circuit has recognized the government's wide latitude in conducting criminal investigations, including its ability to infiltrate an ongoing criminal enterprise or induce a defendant to repeat or continue a crime. *See United States v. Doe*, 698 F.3d 1284, 1294 (10th Cir. 2012); *United States v. Sneed*, 34 F.3d 1570, 1577-78 (10th Cir. 1994); *United States v. Mosley*, 965 F.2d 906, 910-11 (10th Cir. 1992). For a court to find otherwise, the conduct of the criminal investigators must be satisfactorily "outrageous," involving either significant involvement in the creation of the crime or significant coercion to induce the crime. *Mosley*, 965 F.2d 906 at 910-11. The conduct of the criminal investigators here was neither of those things. The Government was simply conducting an investigation and the investigators were under no obligation to inform Defendants of the investigation or of the fact that Defendants had violated the law. The

Government aptly notes that if criminal investigators were required to inform their targets of the illegality of their actions as soon as they were discovered, then the full scope of their criminal activity may not be uncovered or punished. *See* Gov. Reply 5, ECF No. 454.

The Court finds that 19 C.F.R. § 1304(j) is not admissible impeachment material, and any minimal relevance is outweighed by the danger of confusing the issues and misleading the jury in violation of Fed. R. Evid. 403. *See* Fed. R. Evid. 608, 403. Accordingly, the Court will grant the Government's motion to preclude certain evidence concerning 19 C.F.R. § 1304(j).

**IT IS THEREFORE ORDERED** that:

(1)  *United States' Notice of Trial Exhibit and Testimony About Technical and Commercial Feasibility of Indelible Marking* [ECF No. 443] is **GRANTED**;

(2)  *United States' Motion in Limine to Admit Evidence of Defendants' Prior Jewelry Business Experience* [ECF No. 444] is **TAKEN UNDER ADVISEMENT** as described herein; and

(3)  *United States' Motion in Limine to Preclude Evidence Concerning 19 C.F.R. § 1304(j)* [ECF No. 445] is **GRANTED**.

_____
**SENIOR UNITED STATES DISTRICT JUDGE**